CHARLES V. MARSHALL, DEFENDANT IN ERROR, v. BURT & MITCHELL COMPANY, PLAINTIFF IN ERROR.

Argued July 1, 1907—Decided March 2, 1908.

Where a servant is injured while working outside of the scope of his employment, voluntarily and without orders, the master is not chargeable with negligence for failing to warn him of danger.

On error to the Hudson County Circuit Court.

For the plaintiff in error, *Collins & Corbin.*

For the defendant in error, *Frank G. Turner*, and *Vredenburgh, Bedle, Wall & Wilson.*

The opinion of the court was delivered by

TRENCHARD, J.   This writ of error brings under review a judgment of the Hudson County Circuit Court in favor of Charles V. Marshall, the plaintiff below, as compensation for personal injuries sustained while in the employ of the defendant, the Burt & Mitchell Company.

The defendant company is the owner and operator of a dry dock at the foot of Morris street, Jersey City, and at the time

of the accident the plaintiff was employed by it as a ship carpenter. The workshop of the defendant adjoins the dock; in the shop were various machines used in the defendant's business, and among them was a circular or "buzz" saw. The saw was operated by means of a belt and pulley connected with shafting which was run by electric power. This shafting was also connected with a band saw located about thirty feet from the buzz saw. About seven o'clock on the morning of the accident the plaintiff, who had then worked for the defendant about a month as a ship carpenter, was assigned to making repairs on a boat then lying in the dry dock. About an hour later he found that he needed some strips to fix a window of the boat, and he went to the shop, found a piece of wood and looked around for the "saw-master," in order that the latter might saw the strips. At the moment the defendant's superintendent, Mr. Gerhardt, happened to come into the shop, and an employe by the name of Sacks—an extra sawyer—asked him to unlock the switch-box and turn on the power, as he, Sacks, wanted to saw some lumber on the band saw. Gerhardt did so, and Sacks pulled the lever, started the band saw, and began sawing. The plaintiff was standing near with some strips of wood in his hand and began sawing at the buzz saw, and while so engaged was injured.

At the close of the evidence the defendant moved for a direction of a verdict in its favor on the ground, among others, that there was no proof of negligence on the part of the defendant.

The motion was denied by the learned trial judge, an exception allowed, and the refusal assigned as error.

Under the theory upon which the case was submitted to the jury the verdict necessarily rests solely on the alleged negligence of the defendant in putting the plaintiff to work without instruction as to inherent dangers of the work of which the plaintiff did not know and could not reasonably be expected to know.

Of course, the verdict cannot be sustained upon any theory except that on which the question of liability was submitted to the jury, and we think it cannot be so supported.

We have pointed out that the plaintiff was employed as a carpenter—not as a sawyer—and, therefore, in operating the buzz saw, he was doing work outside the scope of his employment.   In such case it becomes a material question whether he was acting under proper authority, for it is clear, upon general principle, that negligence cannot be predicated of· the master's omission to instruct a servant as to work which he was neither expected nor ordered to do.   The rule is that where a servant is injured while working outside of the scope of his employment, voluntarily and without orders, the master is not chargeable with negligence for failing to warn him of danger.   See 26 *Cyc.* 1172, and cases there collected.

We think it clear that the plaintiff was not ordered to use the saw.   It is true that the plaintiff in the early part of his examination-in-chief testified that he had been told the day before "not to wait, to go ahead and saw," but his further examination shows the contrary thereof to be the fact.   His examination by his own counsel proceeded as follows:

"*Q.* How long before the accident was it that you were told by Dr. Brown, the president, to use the saw?

"*A.* Two days before that I was supposed to do a job on a boat on the dry dock, and I stood there waiting for the saw-master; the saw-master wasn't there; he had been sent away to some work; I didn't see the saw-master, and Mr. Brown saw me standing there; he asked me what I was standing there for; why I didn't go ahead with the work; I told him I didn't know how to use the saw; he says, 'Anybody can do that,' and he walked away; a young man named Sacks was there; I asked him to come and saw for me; I was afraid of the saw, and he done the sawing that day for me."

On cross-examination he testified as follows:

"*Q.* What was it Mr. Brown said to you the day before?

"*A.* Told me not to stand round looking at it, and to go ahead and do the work, when I was waiting for Mr. Betz, the saw-master.

"*Q.* Did you go ahead and do the work?

"*A.* No, sir; I watched until Mr. Brown went away; I was afraid to saw, and I watched for Mr. Sacks to come."

It is apparent that Brown (who was dead at the time of trial) did not order the plaintiff to use the buzz saw, and the plaintiff does not testify that he did. According to the plaintiff, Brown simply remarked, "anybody can do that," after asking the plaintiff why he did not go ahead with his work. This did not mean that the plaintiff was to use the saw. At most it was simply a direction by Brown to get the work done as soon as he could, and, if necessary, get the saw-master or one of the extra sawyers. But we think it clear that the only legitimate inference to be drawn from Brown's remarks was that the plaintiff should proceed with his work. His work, it is to be borne in mind, was to repair the boat, not to use the buzz saw. That the remarks of Brown were not regarded by the plaintiff himself as an order to use the buzz saw is shown by the fact that he did not himself use it at that time. He says that he "watched" until Brown went away, and then called upon Sacks, one of the extra sawyers, to saw for him.

We think it clear, therefore, that what was said by Brown could not by any possibility have been understood by the plaintiff as a direction to use the buzz saw, and it is equally plain that the plaintiff could not have regarded what was said as a permission to use the saw for this reason:

By the uncontradicted testimony it was against the rules for any of the men (except certain ones specified, of whom the plaintiff was not one) to use the saw. The plaintiff's own witness King testified that "there was a rule that nobody was to touch it; the foreman had a lock and key on the motor." That the plaintiff knew of the rule is undisputed. He himself testified:

"*Q.* You sometimes had to saw a board?

"*A.* No; I always let the saw-master saw them; I always asked the saw-master, Mr. Betz; he instructed me, when I first began work there, that he was saw-master, and he had to do the sawing except I got orders from somebody else, and Mr. Betz did that work for me all the time he was there."

It is clear, too, that the plaintiff was not ordered to use the saw on the morning of the accident.

With respect to that the plaintiff testified as follows:

"*Q.* When you went there that morning you looked around for the sawyer?

"*A.* The saw-master, yes; I asked for him and he was not there.

"*Q.* Did you see Mr. Gerhardt that morning?

"*A.* Yes; I seen him while I was upstairs getting that piece of wood; I saw Mr. Gerhardt down there starting the saw; I asked him where Frank was, he shook his shoulders, 'I don't know,' he said; that's all he said; then he walked away. He says, 'Go ahead,' he called Mr. Sacks, and he says, 'Go ahead,' and he started the motor-box.

"*Q.* He said that to Mr. Sacks?

"*A.* Mr. Sacks sawed on the other saw and I sawed on this saw.

"*Q.* You were standing there together and Mr. Gerhardt said, 'Go ahead?'

"*A.* We were not standing together; Mr. Sacks was about thirty-five or forty feet away from the saw where I sawed; Gerhardt was standing between us, he started the box to going, and said, 'Go ahead.'

"*Q.* Did he call you by name?

"*A.* No, sir.

"*Q.* You had some wood sawed there the day before?

"*A.* Yes, by Mr. Sacks.

"*Q.* This time, when you sawed this strip, on the day of the accident, was the only time you ever started the saw yourself?

"*A.* That is the only time I ever sawed a buzz saw in my life."

In order to start the saw after the power was turned on it was necessary to pull a lever. It is not clear who started the saw at which the plaintiff was hurt. The superintendent, Mr. Gerhardt, who turned on the power, testified that the saw was stationary when he left the room. The plaintiff was the only person near it.

But, however that may be, it is clear from the foregoing evidence of the plaintiff, when considered in the light of his other evidence, that he was not authorized to use the saw.

It will be noticed that, according to plaintiff's testimony, when Mr. Gerhardt learned from the plaintiff that he needed some strips sawed he called Mr. Sacks (an extra sawyer), unlocked the motor-box and said "go ahead." The plaintiff admits that when this was said Gerhardt was standing with his back to the plaintiff. The remark was undoubtedly addressed to Sacks who was standing at the band saw, and whom, according to the testimony, Gerhardt was facing. Sacks testified that Gerhardt "told me to go ahead and saw my plank;" he said, "Go ahead, Frank." Gerhardt testified that "On the morning of the accident I unlocked the switch-box. Sacks asked me to unlock it for him, he wanted to saw a piece of lumber. Said he wanted to use the band saw. I unlocked the box and told him to go ahead. Do not remember seeing Marshall. I did not say anything to anybody except to Sacks. I was standing near the switch-box when I spoke to him. The box is kept locked to keep the men away from the saw." Moreover, according to the plaintiff's own statement made before trial, Gerhardt told "the other man" to go ahead and saw his piece of wood, but did not tell plaintiff to do so. It is very significant that the plaintiff, when recalled to explain this statement, did not deny the vital part of it, namely, that Gerhardt told "the other man" to go ahead and did not tell plaintiff to do so.

In view of all the testimony, we are of the opinion that there was no evidence that the plaintiff was authorized to work at the circular saw which was, under the theory upon which the case was submitted to the jury, essential to a finding of the defendant's negligence.

The trial court therefore erred in denying the motion for a direction of a verdict, and the judgment under review must be reversed and a new trial awarded.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL, J.J.   11.